## J. H. Cage v. Heirs of John C. Tucker.

Decided January 5, 1901.

**1.—Practice on Appeal—Assignment of Error—Brief—Proposition.**

The propositions, or assignments of error submitted as propositions, in an appellant's brief, should each present a single idea, a distinct ground for reversal, and be supported by a statement giving not argumentative deductions, but copies of the charge complained of or other matter in the record, or at least its substance. See propositions and statements held insufficient.

**2.—Community Property—Sale by Survivor—Necessity.**

Where community debts existed, the survivor, being clothed with a general power to sell for their payment, must determine the necessity for sale, and the title of a purchaser, in the absence of fraud, can not be made to depend on the actual existence of such necessity.

**3.—Same—Fraud—Evidence.**

Proof that no actual necessity for the sale existed is admissible, in such cases, only on the issue as to whether the sale was fraudulent and collusive.

**4.—Community Debts—Good Faith.**

A charge should not require proof that the community debts authorizing sale by the survivor were bona fide, where no issue was made as to their validity.

**5.—Community—Purchaser from Survivor—Adequate Consideration.**

The purchaser of community property from the survivor selling to discharge community debts need not show that he paid a "fairly adequate" consideration, to sustain his title.

Appeal from Comanche.    Trial below before Hon. N. R. Lindsey.

*Lee Young* and *A. P. Young,* for appellant.

*G. H. Goodson,* for appellee.

CONNER, Chief Justice.—For the second time this case is before this court on appeal. This suit is one in trespass to try title instituted by appellees as the heirs of John C. Tucker, deceased, to recover of appellant an undivided one-half of the lands described in the petition, claiming title by descent from their deceased father, John C. Tucker. Appellant claimed by virtue of a conveyance from Mrs. P. J. Tucker, the mother of appellees and surviving wife of said John C. Tucker, alleged to have been made for the purpose of paying community debts of the said John C. and P. J. Tucker. Appellees denied that such was the purpose of the sale to appellant, and alleged fraud. A more complete statement of the nature and details of the suit may be found in the report of the case made on the former appeal. See Cage v. Tucker's Heirs, 14 Texas Civ. App., 316.

On this appeal we are confronted with the preliminary question as to the sufficiency of the assignments of error urged by appellant. They are eighteen or nineteen in number, and were apparently intended to present several interesting questions for our consideration; but appellees urge objections thereto on the ground of a want of conformity with the

rules prescribed by the Supreme Court for the preparation of a cause for submission. We are of opinion that such objections are well taken and must be sustained as against every assignment save the sixth; and we do not feel very clear that it should be considered, although we have finally concluded to do so, as hereinafter more fully stated. Rules 24 to 26 of the rules of the Courts of Civil Appeals provide that an assignment must distinctly specify the ground of error relied on, and in a particular manner point out that part of the proceedings contained in the record in which consists the error complained of, so as to identify it, and assignments not prepared as therein required will be considered as waived the same as if no assignments of error had been filed. Rules 29 to 32 inclusive require assignments of error to be copied in the brief and accompanied with appropriate propositions and statements, and when not so done the assignment shall be regarded as abandoned.

As illustrating the force of appellee's objections, we will give from appellant's brief his presentation of the second, eighth, and nineteenth asignments, to wit:

"The second and eighth asignments are presented as propositions together:

"Second Assignment.—The court erred in giving the special instructions requested by the plaintiffs, because the effect of such special instruction was to require the defendant J. H. Cage to see to the application of the proceeds of community property, and the law does not require a purchaser to see to the application of the proceeds of a sale. See charges, pages 105, 106.

"Eighth Assignment.—The court erred in refusing to give the special instruction requested by appellant, number 2, for the reason that the unquestioned evidence showed the land to be the homestead of John C. and P. J. Tucker at the time of John C. Tucker's death.

"The nineteenth assignment is presented as a proposition.

"Because every error assigned herein (in the assignment of errors) was assigned in the motion for a new trial, and the court erred in refusing a new trial."

The statements following these assignments are made to apply generally to the propositions involved, and consist, as we conceive, largely in argumentative deduction from the evidence.

Comment would seem to be unnecessary. We think it evident that the nineteenth assignment contains no distinct specification of error, and that the second and eighth contain entirely distinct and different propositions. Assignments when grouped should be followed by a distinct proposition or propositions severally presenting a single idea, followed by a quotation of the charge, or paragraph of the charge, the bill of exception, evidence, or fact relied upon, or at least the substance thereof, pointing out the particular place where to be found.

While perhaps not necessary to the decision, our Supreme Court in the case of Cooper v. Hiner, 91 Texas, 658, used language indicating that a

nonobservance of rule 29 made it mandatory upon us to disregard assignments of error in nonconformity therewith. But whether so or not, with the exception stated, we decline to consider appellant's assignments of error for manifest noncompliance with the rules. The rules referred to have in view the simplification of the many intricate questions constantly presented to the appellate courts and the saving of much valuable time and great labor, and we would endeavor to impress upon counsel engaged in the preparation of causes for submission on appeal the necessity of a careful observance of the rules prescribed therefor. In further illustration of what we have said on the subject see the following authorities: Texas Land Co. v. Williams, 48 Texas, 613; McManus v. Wallace, 52 Texas, 541; Live Stock Co. v. Chamberlain, 70 Texas, 138; McCrary v. Robinson, 57 S. W. Rep., 682; Railway v. True, 57 S. W. Rep., 977; Railway v. Smith, 57 S. W. Rep., 999; Shanks v. Carroll, 50 Texas, 19, 20; Battle v. John, 49 Texas, 289.

Appellees' objection to the consideration of the sixth assignment goes alone to the statement thereunder. While the statement does not comply strictly with rule 31, it does give the page of the transcript containing the objectionable charge, together with some of the appropriate facts necessary to be considered therewith, and we have accordingly decided, as stated, to consider the assignment; especially in view of the inclination of at least a part of the court to consider the question as error "apparent on the face of the record." See Rev. Stats., art. 1014; Rule 23, supra; Clements v. Clements, 46 S. W. Rep., 61.

The sixth assignment of error, which is submitted as a proposition, is as follows:

"The court erred in submitting the question as to whether a necessity for sale did exist in order to warrant the sale, because the law does not require that a purchaser under a survivor should show that a necessity for a sale did exist, nor does the law require the purchaser to prove any other fact than the existence of community debts in an amount which would create the appearance of a necessity for a sale. The rule adopted by the court makes the purchaser from a survivor a trustee, and charges him with the duties of a trustee, and the purchaser would then become responsible for the proper exercise of the discretion which the law vests in the survivor."

The charge of the court, here in effect complained of, is as follows:

"Therefore, if you believe from the evidence that at the time of the death of John C. Tucker there existed community debts against John C. and P. J. Tucker, incurred in good faith, as above explained, and you further believe it was necessary to sell any of the community property belonging to John C. and P. J. Tucker to pay such debts, and you further believe from the evidence that Mrs. P. J. Tucker in good faith sold said property to the defendant J. H. Cage, for the purpose of paying such community debts, and that said defendant J. H. Cage purchased said land in good faith, and without the fraud and collusion charged by the plaintiff, and paid therefor a price which under all of the surround-

ing circumstances was fairly adequate, then you will find for the defendant J. H. Cage."

It will be noted that the jury were thus, in effect, instructed that, however they might determine the other issues, they were not authorized to find for appellant unless they found that there existed an actual necessity for the sale of the land in controversy. This view was emphasized by the court in stating the converse of the proposition, the court in the same connection further instructing the jury that:

"If you should find from the evidence that there was at the time such sale was made no necessity for selling any of the community property belonging to the estate of John C. Tucker, deceased, and Mrs. P. J. Tucker, for the purpose of paying community debts, * * * you will find for the plaintiffs for one-half of the community interest of John C. Tucker and P. J. Tucker in said land."

In so instructing the jury we think there was error for which the judgment must be reversed.

The facts without dispute show that the 600 acres of land involved in this controversy was the community property of John C. and P. J. Tucker, and that at the time of John C. Tucker's death and at the time of the conveyance by Mrs. P. J. Tucker to appellant there existed community debts of which at least $700 was secured by the vendor's lien on said land. It is the settled law of this State that community property descends, if at all, charged with the payment of community debts, and that a community survivor has the power to convey community property in payment of such debts. In speaking of this power our Supreme Court, in the case of Sanger Bros. v. Heirs of Moody, 60 Texas, 100, say: "The power of the survivor is certainly a general power to sell for the purpose of paying any and every debt the community estate may owe." If the power so vested by law in the community survivor is a general one it must follow, as in the case of the exercise of any other general power committed by law or otherwise, that the discretion and responsibility involved in its exercise rests upon the agent to whom the power is committed. The burden is upon one claiming through a transmitting agent of general powers to show that the power to convey in fact existed in the agent, but the purchaser is not required to show that sound discretion and judgment was used in its exercise, nor to see that the agent properly applied the proceeds. So that we think it was error to, in effect, require a finding that the sale in question was necessary as a mater of fact before appellant could recover. See Wenar v. Stenzel, 48 Texas, 484. In what we have said, however, we do not wish to be understood as holding that evidence of a want of necessity for the sale under consideration is not relevant in this case. It is so only, however, on the issue of fraud and collusion charged. If in fact community debts existed, and for the purpose of their payment the sale was made in good faith by Mrs. Tucker and without the fraud and collusion charged, then appellant took good title whether there existed a real necessity for the sale or not. If no necessity for a sale existed, however, that fact may be considered together

with all other circumstances in determining whether the sale was made in good faith by Mrs. Tucker for the purpose stated, and whether appellant in his purchase was guilty of the fraud and collusion charged. See Eastman v. Smith, 11 Texas Civ. App., 133.

That the error discussed was prejudicial we think apparent from the fact that while there was evidence to show that the sale to appellant was made in good faith and for the purpose of paying subsisting community debts, there was also evidence tending to show that no immediate necessity for a sale existed. Mr. Hyatt, the owner of the vendor's lien debt mentioned at the time of John C. Tucker's death, testified that he "talked to Mrs. Tucker about the payment" of the debt referred to, "but never threatened to sue," that he remembered. Mrs. Tucker testified on this point that "Mr. Hyatt told me that he did not intend to push me about the notes, and if I would have stayed on the place I could have, with a crop or two, paid the Hyatt notes—the rent would have done so." The jury, therefore, may have found against appellant on the ground that there was no necessity for the sale, as they were required to do under the charge if they so believed, although they further believed that Mrs. Tucker made the sale for the purpose of paying community debts and that appellant purchased without the fraud and collusion charged.

In view of another trial we think it not improper to suggest that the charge quoted above might be further relieved of objection by eliminating the terms "good faith" as a qualification of the community debts, inasmuch as no issue in the pleadings or proof seems to have been made as to the validity of the community debts of John C. Tucker and wife.

The requirement of the charge that appellant should pay a price that was "fairly adequate" should be eliminated.

For the error discussed, the judgment below is reversed and the cause remanded.

*Reversed and remanded*