KYLE v. HIGGINBOTHAM et al. (No. 7022.)*

(Court of Civil Appeals of Texas. Austin. Nov. 10, 1926. Rehearing Denied Dec. 1, 1926.)

**1. Vendor and purchaser ⬅⟹349—Petition, in suit on bond to perfect title, need not conform to rules of pleading applicable in suit on general warranty.**

Petition, in suit on bond agreeing to perfect known defects in title, *held* not demurrable for failure to conform to rules with reference to pleading in suits on general covenants of warranty.

**2. Vendor and purchaser ⬅⟹349—Petition for recovery on bond to perfect title for loss of sale of oil lease need not allege land was sold as oil bearing.**

Petition for recovery on bond to perfect title, alleging damages sustained in loss of sale of oil lease, because of defect, need not allege that land was sold as oil bearing, since oil is an interest in land and within contemplation of parties at time of sale.

**3. Vendor and purchaser ⬅⟹349—Allegation, in suit on bond to perfect title, held sufficient to show attempt to minimize damages from loss of sale of oil lease by reason of defects.**

Allegation, in suit, to recover on bond to perfect title, for damages for loss of sale of oil lease, that plaintiff, at time of sale of lease, did not know title had not been perfected *held* sufficient as against contention that there was no endeavor to prevent or minimize damages.

**4. Damages ⬅⟹62(4)—On learning of breach of contract, ordinary care must be used to prevent further damage.**

One learning of breach of contract, which will result in injury or damage, must use ordinary care to prevent further injury or damage therefrom.

**5. Damages ⬅⟹208(7)—Question of ordinary care to prevent further damages, after learning of breach of contract, is ordinarily for jury.**

Question of ordinary care to be used by one learning of breach of contract, which will result in injury or damages, in order to prevent further injury or damages, usually is for jury.

**6. Dismissal and nonsuit ⬅⟹19(1)—Permitting nonsuit on cross-action seeking recovery on purchase-money notes held error, where plaintiff asked cancellation of part of notes and alleged willingness to pay balance.**

Permitting nonsuit on cross-action, in suit on bond to perfect title seeking recovery on purchase-money notes, *held* error, where plaintiff asked that notes be canceled to extent of damages under bond and averred willingness to pay balance due on notes.

**7. Quieting title ⬅⟹52—Rendering judgment in favor of one disclaiming interest in land to which plaintiff sought to quiet title held fundamental error.**

Judgment in favor of defendant on disclaimer to land on which plaintiff sought to quiet title constituted fundamental error, since judgment should have been for plaintiff for all of land disclaimed.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Mrs. G. F. Kyle against J. M. Higginbotham and others, wherein defendant filed a cross-action, on which nonsuit was subsequently taken. Judgment sustaining a general demurrer and dismissing the suit, and plaintiff appeals. Judgment reformed in part, and in part reversed and remanded.

Etheridge, McCormick & Bromberg, of Dallas, and J. W. Stitt, of Fort Worth, for appellant.

Read, Lowrance & Bates, of Dallas, for appellees.

BLAIR, J. The principal question presented by this appeal is whether the trial court erred in sustaining a general demurrer to appellant's petition and dismissing the suit upon her refusal to amend. Her amended petition, on which the trial was had, alleged, in substance, that on October 1, 1914, appellees conveyed to George F. Kyle by three separate warranty deeds three tracts of land, aggregating about 235 acres, in Eastland county, Tex.; that Kyle gave notes, aggregating $11,000, in part payment of the land; that Kyle's attorney refused to approve or pass the titles to the land as well vested in appellees, and that they could not furnish Kyle a good and marketable record title as they were obligated to do; that, as an inducement to Kyle to accept the deeds and deliver his notes, appellees executed and delivered to Kyle their personal bond, on February 17, 1915, in the sum of $5,000, conditioned that they would diligently proceed at their own expense to perfect the title to the extent that the abstract and records thereof would disclose a good and merchantable title in Kyle, subject only to the purchase-money notes, within six months, if suits were not required, and within two years, if suits were required; that Kyle, relying upon the representations and the assurance of the bond, accepted the deeds and delivered his said notes to appellees; that Kyle died in 1916, leaving his estate to his widow, Mrs. G. F. Kyle, the appellant, who, in 1919 undertook to and did contract to sell to a certain named party an oil and gas lease on one tract of the land for the sum of $4,500 in cash; that the purchaser's attorney refused to pass or approve appellant's title because of defects, which the bond obligated appellees to perfect and which defects were specially pleaded; that, although appellees had represented to Kyle that they had perfected the titles, it developed at the time of the sale of the oil and gas lease that they had done practically nothing towards fulfilling their bond obligations;

and that because of such nonperformance appellant had lost the proceeds of the sale of the oil and gas lease to her damages in the sum of $4,500, for which she prayed judgment; and, further, that the $4,500 be applied in cancellation of the purchase-money notes held by appellees; and for general relief.

Appellees filed an answer which consisted of a general demurrer, several special exceptions, and a cross-action against appellant upon all the unpaid notes given as purchase money for the land, and for a foreclosure of the purchase-money lien securing them.

By supplemental petition, appellant alleged that three of the purchase-money notes were due October 1, 1921; that before their maturity, as was her custom in former years without objection, she sent appellees her check in payment of these notes and interest, which appellees returned to her, with the statement that the check was not legal tender; whereupon she made legal tender, but appellees refused it upon the ground that it came too late, since they had declared all notes due and payable under the acceleration of payment clause, and had placed them in the hands of attorneys for collection and for foreclosure of the lien securing them, which would be done unless this suit was abandoned by appellant; that she did not dismiss the suit; and that by reason of the nonperformance of the bond obligations by appellees the consideration for the notes had failed to the extent of her damages under the bond; and she prayed that the unpaid notes be canceled to that extent, and tendered payment of any balance due on the notes.

Thereafter, on January 7, 1924, appellees took a nonsuit on their cross-action on the purchase-money notes, over the protest and objection of appellant. Appellant then amended her original petition, but not her supplemental petition, and, in addition to the matters pleaded as hereinbefore set out, alleged in the alternative that, by reason of the failure of consideration of the unpaid notes to the extent of her damages for nonperformance of the bond, a cloud was cast upon her title, which she prayed be removed by a cancellation of said notes to the extent of her damages.

Appellees filed an amended answer, consisting of a general demurrer and several special exceptions, but omitted therefrom their cross-action on the purchase-money notes.

A hearing was had September 30, 1924, and appellees' general demurrer and several of their special exceptions were sustained, and appellant's suit dismissed. But, since the general demurrer to appellant's petition was sustained, the sustaining of what are designated special exceptions becomes immaterial. However, some of them are but general demurrers to particular theories or grounds upon which appellant sought judgment and will be so considered. Gin Co. v. Bank (Tex. Civ. App.) 279 S. W. 886.

The trial court sustained the general demurrer, or the several general demurrers, upon the following grounds:

(1) That Kyle purchased the land and accepted the deeds and the bond sued upon with full knowledge of the alleged defects in title.

(2) That the petition did not allege failure of title, in whole or in part, to any of the three tracts of land.

(3) That no fatal or material defects in titles were alleged, but mere conclusions of law unsupported by any particular facts.

(4) That the petition negatives the fact that either Kyle or appellant had been evicted from the land.

(5) That appellant did not ask for a rescission.

(6) That the petition seeks a recovery on the bond for damages alleged to have been sustained for the loss of the sale of an oil and gas lease on the 224-acre tract; that there was no allegation that the land was sold as oil bearing, or on a representation that it was oil bearing, or that it was within the contemplation of the parties that the purchaser or his successor in title would attempt to sell an oil and gas lease thereon; and that the damages sought are special damages, too remote and speculative, and represent a loss of profit sustained on a collateral contract subsequently made affecting a matter not within the knowledge or contemplation of the parties to the original contract of sale or bond.

(7) That the petition did not allege that appellant endeavored to prevent or minimize her damages by suing the purchaser of the oil and gas lease for specific performance of his contract or for damages for a breach thereof.

Neither ground upon which the action of the trial court is based is sustained.

[1] In sustaining the general demurrer to the petition, the court necessarily took the view that the collateral contract and bond, upon which appellant sued, added nothing to the general covenants of warranty in the deeds conveying the land to her predecessor in title, and that therefore the rules with reference to pleadings in suits upon general covenants of warranty in deeds should apply. That is, with reference to grounds 1 to 5, both inclusive, the court held that, since the three deeds conveyed Kyle the land by general covenants of warranty and were executed contracts, before appellant could resist the payment of the purchase-money notes because of defects in the title, she must allege that she was ignorant of such defects at the time of the execution and delivery of the deeds, that the titles were wholly defec-

tive, or that there were outstanding titles in others, or that vendors clearly had no titles, or that the titles were such as exposed her to the dangers, or, in fact, the certainty of eviction, then she would not be compelled to pay the notes, but after eviction might seek her remedy on the general covenants of warranty in the deeds. The court also applied the rule with reference to an offer to rescind the contract of sale before appellant would be permitted to remain in possession and delay payment of the notes.

But we have reached the conclusion that these rules are clearly aside the mark and have no application to appellant's suit upon the collateral contract and bond of appellees to perfect, within a fixed time, the known and acknowledged defects of the record titles, and upon failing to do so to respond in damages to the extent of $5,000. In fact, the very nature and purpose of the collateral contract and bond was to take the transactions specified therein from out of the rule or rules applied by the court. Certainly, appellant could not have alleged ignorance of the defects when the purpose of the collateral contract and bond was to point them out and make provision for remedying them. The trouble was not with the actual titles to the land, but was with reference to the record titles, as disclosed by the abstracts, and the suit is simply one to recover damages for a breach of the collateral contract and bond to perfect the record titles, without regard to the covenants of warranty in the deeds, except in so far as the contract and bond are collateral thereto. It may be true, as asserted by appellees, that the bond only undertook to require them to do that which the covenants of warranty in the deeds obligated them to do; but that fact did not prevent the parties from further contracting that those covenants should be fulfilled in a specific manner and within a specified time, and for damages for failure to perform the contract. But whether the general covenants of warranty in the deeds required vendors to furnish abstracts showing good and merchantable record titles is not a material question here, since by written contract and bond they have agreed to do so. It is also immaterial whether the defects specified in the contract and bond are frivolous or of no material consequence, since there is no rule of law prohibiting men from making frivolous and inconsequential contracts. However, we hold that the defects alleged and contracted to be remedied are not frivolous or inconsequential.

In support of the action of the trial court, appellees cite the following cases: Frantz v. Masterson (Tex. Civ. App.) 133 S. W. 740; Cooper v. Singleton, 19 Tex. 260, 70 Am. Dec. 333; Carson v. Kelley & Sweatt, 57 Tex. 379; Ogburn v. Whitlow, 80 Tex. 239, 15 S. W. 807; Fagan v. McWhirter, 71 Tex. 567,

9 S. W. 677; Earle v. Marx, 80 Tex. 39, 15 S. W. 595; With the exception of the suit in the first case cited, the suit in each case was upon the covenants of warranty in the deed and furnishes no authority in this case, where the suit is upon the collateral contract and bond to provide abstracts showing good and merchantable record titles. In the Frantz-Masterson Case, supra, and upon which appellees principally rely, the suit was to enjoin a trustee's sale of the land in satisfaction of the purchase-money notes until vendor had complied with his collateral agreement or contract, executed simultaneously with the execution and delivery of the deed, and by which he agreed to meet and correct all the objections to the title pointed out by the attorney of vendee; and, with reference to the collateral agreement, the Court of Civil appeals held:

"This agreement, if it could modify to any extent the rule laid down in Cooper v. Singleton and the other cases cited above, was not sufficient, in view of the state of the pleadings, to authorize the court by injunction to prevent the collection of all the notes, while the plaintiffs in error at the same time withheld from the vendors the possession of the land, and while thus holding possession postpone indefinitely any efforts of defendants in error to collect the whole or any portion of the amount of said notes."

In that case, the Supreme Court granted a writ of error, with the following notation:

"Incline to think the plaintiffs were entitled to stay collection of purchase money until defendant complied with agreement to perfect title."

The cause was then settled and dismissed by agreement of the parties before further action by the court. The notation supports our view of this case, and we will not discuss the Court of Civil Appeals' opinion further than to say that, if it is in conflict with our decision here, we must respectfully refuse to follow it.

[2] Neither do we sustain the sixth ground upon which the general demurrer was sustained. The deeds conveyed all the right, title, and interest that appellees had in the land to Kyle. Oil is an interest in land. It is an interest capable of being separated from other interests and sold. The contract and bond obligated appellees to perfect the record titles to all interests in and to the land conveyed, and to pay damages for failure to perform the obligation; and, since oil is an interest, it was therefore within the contemplation of the parties when the sale was made. For the same reason, the damages arising from the loss of the sale of an oil lease on the land are not too remote or speculative, for such damages were within the contemplation of the parties when they contracted that appellees should perfect ti-

tles to that interest and pay damages upon their failure to do so.

[3-5] The seventh ground that the petition failed to allege that appellant endeavored to prevent or minimize her damages, etc., is without merit. The petition alleges that, when she sold the oil lease, she did not know that appellees had not complied with their contract to perfect the titles, but that she soon learned of their failure to do so, and that she did all she could to perfect the titles within the time specified by the contract to sell the oil lease. The rule is well settled that when a plaintiff learns of a breach of a contract, which will result in injury or damages to him, he must use ordinary care to prevent further injury or damages, and what is ordinary care is usually a question for the jury to determine. So we submit that the pleadings in this respect are entirely sufficient. Belcher v. Ry. Co., 92 Tex. 593, 50 S. W. 560.

[6] The court also erred in permitting appellees to take a nonsuit on their suit on the purchase-money notes and to foreclose the lien securing them. As stated, appellees filed a cross-action to recover on the purchase-money notes. They had appellant cited, as in an original cause on the notes. She answered the action to enforce the lien, setting up the defects of titles and the nonperformance by appellees of the contract and bond with reference to them, as an outstanding incumbrance, and as constituting a failure of consideration to the extent of the amount that she might recover under the bond. She asked that the notes be canceled to the extent of her damages under the bond, and pleaded that she stood ready, able, and willing to pay the balance due on the notes, and tendered, or offered to tender, that amount into court. In such suit, she had the right to stay payments on the notes until the defects or incumbrances were removed, as an affirmative relief against the notes and lien, and, having tendered or offered to pay the balance due appellees, the court, as a matter of equity and in order to avoid a multiplicity of suits with reference to the same subject-matter, should not have permitted the nonsuit. Brown v. Montgomery, 89 Tex. 250, 34 S. W. 443; Wolf v. Wolf (Tex. Civ. App.) 269 S. W. 488. The notes and lien securing them were executed and delivered in express consideration of the execution and delivery of the bond, and appellant should have been permitted to hold the notes in the cross-action for cancellation to the extent of her damages, and, having offered to tender the balance due, appellees could in no way be injured.

Among other record defects in titles, appellant alleged that one B. T. Higginbotham appeared as having had title to the land of which he had not been divested, and she made him a party to the suit along with appellees and prayed, as against him, that the cloud cast upon her title be removed, and that title be quieted in her and for general relief.

[7] B. T. Higginbotham filed a disclaimer to any interest in the land, and, upon these pleadings, the court rendered judgment in favor of B. T. Higginbotham on his disclaimer. Appellant contends that this action by the court constitutes fundamental error. We sustain the contention. The judgment should have been for appellant for all of the land sued for, as to which this defendant disclaimed, and failure to so render such judgment constitutes fundamental error. The judgment will be reformed so as to allow appellant to recover all the land sued for, as to which defendant B. T. Higginbotham disclaimed, and in all other respects the judgment of the trial court is reversed and remanded. Snyder v. Compton (Tex. Civ. App.) 29 S. W. 73.

Reformed in part, and in part reversed and remanded.