### GRIFFIN et al. v. STANOLIND OIL & GAS CO.

No. 5029.

Court of Civil Appeals of Texas. Texarkana.

Jan. 28, 1937.

Rehearing Denied Feb. 11, 1937.

Wynne & Wynne, of Longview, and Brin & Cate, of Terrell, for appellants.

Turner, Rodgers & Winn and M. B. Solomon, all of Dallas, and L. A. Thompson, Jr., and Clay Tallman, both of Tulsa, Okl., for appellee.

JOHNSON, Chief Justice.

Prior to 1897 Julia Muckelroy and Elihu Muckelroy were married and to them were born two children, one of whom was named Minnie, and she married John Prothro,

and to them were born five children whose names were as follows: Elihu, Obie, Naomi, James, and Maurice. In 1897 Julia Muckelroy, being then a widow, married A. A. (Alex) Lockhart and to this marriage were born two children whose names were Ruth and Lovie. Ruth married Frank Lockhart and Lovie married Lonnie Coulter. On September 28, 1917, J. R. Garner conveyed to A. A. Lockhart 54 acres of land in the Tennison survey, 50 acres in the Blair survey, and 44¾ acres in the Norris survey. It appears that these tracts of land became the community property of A. A. Lockhart and his wife, Julia Lockhart. On February 5, 1930, Julia Lockhart died. Prior to this date her daughter Minnie Prothro had died. A few months after the death of Julia, A. A. Lockhart married Cohesia; and on October 9, 1930, A. A. Lockhart and his wife, Cohesia Lockhart, and his daughter Ruth Lockhart and her husband, Frank Lockhart, and his daughter Lovie Coulter and her husband, Lonnie Coulter, executed an oil and gas lease to L. A. Grelling, Jr., and O. M. Boren covering the same land acquired by A. A. Lockhart and his wife Julia. This lease contains, among others, the following provisions:

"Witnesseth: That the said lessor, for and in consideration of Ten and No/100 ($10.00) Dollars, cash in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept, and performed ha—— granted, demised, leased, and let, and by these presents do grant, lease, and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, power stations, and structures thereon to produce, save and take care of said products, all that certain tracts of land situated in the County of Gregg, State of Texas, described as follows, to-wit: [Here follows description of land.]

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgages, taxes, or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof, and lessor hereby agrees that any such payment made by lessee for the lessor shall be deducted from any amounts of money which may become due the lessor under the terms of this lease. In Testimony Whereof, we sign, this the 9th day of October, 1930."

At the time this lease was executed the taxes for the year 1929 in the sum of $38.70 against the land and certain personal property to the value of $200 had not been paid. On October 11, 1930, these taxes were paid by A. A. Lockhart.

This suit involves the seven-eighths leasehold estate in and under 20.92 acres of land, a part of the Margaret Tennison survey, which was a part of the community property of A. A. and Julia Lockhart, and was described in the oil and gas lease of Grelling and Boren. The suit, in so far as this appeal is concerned, is one in trespass to try title brought by John Prothro as guardian of his son, Maurice Prothro, and K. W. Griffin, and F. E. Lumpkin, who hold the interest of the other Prothro children, the interest of the Prothro children being five-fortieths of the entire leasehold estate, against the Stanolind Oil & Gas Company, which claims the entire leasehold estate under the 20.92 acres involved by virtue of an assignment to it of the Grelling and Boren lease. The Stanolind Oil & Gas Company pleaded not guilty, innocent purchaser for value, and by way of cross-action, trespass to try title, against all the other parties.

The case was tried to the court without a jury, and resulted in a judgment for appellee for title to all the oil and gas leasehold estate. From this judgment the plaintiffs have duly prosecuted an appeal to this court.

The trial court's judgment in favor of appellee was rendered on the theory that the taxes for 1929 unpaid at the time the Grelling and Boren lease was executed was a community debt of A. A. and Julia Lockhart, and the payment of said taxes shortly after said lease was executed raised the presumption that the proceeds derived from the sale of the oil and gas lease were used for the payment of community indebtedness and that these facts authorize the community survivor, A. A. Lockhart, to execute the oil and gas lease on the community estate. The trial court in its judgment found against the appellee on the issue of innocent purchaser and appellee has cross-assigned error to the court's judgment on this finding. We are not passing upon appellee's cross-assignments, since, in our opinion, the trial court's

judgment may be sustained on the view expressed by the trial court in its judgment.

■ It appears without dispute in the record that A. A. Lockhart and his wife Julia acquired the property involved during their marriage under circumstances which rendered it community property; that, A. A. Lockhart being community survivor, and at the time he executed the oil and gas lease to Grelling and Boren under which the appellee claims, there was a community debt existing in the form of delinquent taxes on the property conveyed. Under this state of facts it seems settled by the authorities that A. A. Lockhart had the power to convey the seven-eighths leasehold estate and in executing the lease to Grelling and Boren he did pass title to such interest in the land involved. Stone v. Light (Tex.Civ.App.) 228 S.W. 1108; Norwood v. King (Tex.Civ.App.) 155 S. W. 366.

■ As we understand appellants' contentions on this appeal, they are that the appellee, in order to sustain its title, had the burden of showing not only that the land was community property, that A. A. Lockhart was a community survivor, and that there existed a community debt, but that it was also necessary for appellee to show that the purchaser made the sale for the purpose of paying the community debt, that he used the proceeds of the sale to pay such debt, and that the circumstances were such that necessitated the sale for the payment of such debt. There is no merit in the contention that the burden was upon the appellee to prove that the proceeds from the sale was used to pay the community debt before appellee could recover in this case. Sanger Bros. v. Moody's Heirs, 60 Tex. 96.

The other contentions of appellants were before the court in the case of Cage v. Tucker's Heirs, 14 Tex.Civ.App. 316, 37 S.W. 180, and again reported in 25 Tex. Civ.App. 48, 60 S.W. 579, and were there decided adversely to appellants. In the case of Iiams v. Mager (Tex.Civ.App.) 216 S.W. 422, 424, a case very similar to the one now under consideration, in overruling the contention that the purchaser must show that the sale was made for the purpose of paying community debts, it was held: "The property was the community property of Frank W. Iiams and his wife, and upon the death of the wife the children inherited her interest therein. The surviving husband, however, had the right to dispose of the entire community interest in the property for the purpose of paying community debts. When this power exists, the only limitation that the courts impose upon its exercise is that of good faith. The purchaser at a sale of community property, made by the survivor, is bound to ascertain that the facts exist that confer the power of sale on the survivor. Having ascertained that such facts do exist, he may assume that the survivor is acting in good faith in making the sale, provided, of course, that he has no notice or the facts surrounding the sale are not sufficient to excite inquiry that the power is being exercised for some ulterior purpose. So that ordinarily, the purchaser, in order to defend his title, against the claims of the wife's heirs, is only bound to show the existence of community debts at the time of his purchase. These general conclusions are supported by the following authorities: Johnson v. Harrison, 48 Tex. [257] 266; Sanger Bros. v. Heirs of Moody, 60 Tex. 96; Crawford v. Gibson [Tex.Civ.App.] 203 S.W. 375; Cage v. Tucker's Heirs, 14 Tex.Civ.App. 316, 37 S.W. 180; Cruse v. Barclay, 30 Tex.Civ.App. 211, 70 S.W. 358. In the case before us it was shown that community debts existed and were a specific charge on the particular tract of land that was sold; as a result of the sale the obligation due the state was discharged, though it is not shown whether the other debt was paid out of the proceeds of the sale or not. The purchaser, however, did not have to see to the application of the proceeds. The facts do not show that the sale was made in fraud of the heirs. These facts warranted the court in finding that the defendants had discharged the burden that the law imposed on them in order to uphold the sale. Morgan v. Lomas [Tex.Civ.App.] 159 S.W. 869, and Jones v. Harris [Tex.Civ.App.] 139 S.W. 69, in addition to authorities already cited."

■ Appellant makes the contention that the fact that two of the heirs of Julia Muckelroy, and Cohesia, the second wife of A. A. Lockhart, joined him in the execution of the oil and gas lease is sufficient as a matter of law to show that A. A. Lockhart did not convey as community survivor. We overrule this contention. The provisions of the oil and gas lease above set out show an undertaking on the part of grantors to convey the entire leasehold estate, and it must be held that such conveyance passes such title as the grantors were au-

thorized to convey. And, since A. A. Lockhart was authorized to convey the entire title, it follows that such title passed by the execution of the lease by him. Carter v. Conner, 60 Tex. 52; Jones v. Harris (Tex.Civ.App.) 139 S.W. 69. We do not believe the case of Mariposa Land & Cattle Co. v. Silliman, 87 Tex. 142, 26 S.W. 978, holds the contrary, for the reason that the grantors in that case expressly conveyed as heirs, which, of course, would negative the idea that the wife was conveying as community survivor.

Believing that the trial court's judgment is amply supported by the evidence, it is in all things affirmed.